[Civ. No. 16180.   First Dist., Div. Two.   Feb. 23, 1955.]

ROSE PIERCE, Respondent, v. JOHN FREITAS, Appellant.

Frank G. Nunes, Jr., for Appellant.

Machado & Machado for Respondent.

NOURSE, P. J.—Respondent Rose Vierra Pierce in 1952 instituted a quiet title action with respect to a rectangular parcel of real property with a front of 60 feet on the southwest side of Main Street in Santa Clara. The parcel had been acquired from appellant Freitas. The deposit receipt in respondent's name dated August 21, 1946, described the parcel as 2052 Main Street only. The deed dated January 4, 1947, was taken in the name of respondent's son Manuel Vierra. It conveyed also another lot not here involved. It described the front of the rectangular lot in question as follows: ''Beginning at a harrow tooth on the southwesterly line of Main Street, distant thereon North 23° 00′ West 596.00 feet from the point of intersection of the said southwesterly line of Main Street with the northwesterly line of Reed Street, . . . ; running thence North 23° 00′ West along the said southwesterly line of Main Street 60.00 feet to a stake set at the common corner for Lots 6 and 7 . . .'' By a grant deed of July 13, 1948, Manuel Vierra and his wife conveyed the parcel to respondent, the deed containing exactly the same description as the deed from appellant to Manuel Vierra.

It was appellant's contention that the above description in the deed signed by him was the result of mutual mistake as he had agreed to sell a rectangular lot with a frontage of 55 feet only, the description of which should have read: ''Beginning at a harrow tooth on the southwesterly line of Main Street, distant thereon North 23° 00′ West *601 feet* from the point of intersection of the said southwesterly line of

Main Street with the northwesterly line of Reed Street . . . ;
running thence North 23° 00' West along the said south-
westerly line of Main Street *55.00 feet* to a stake set at the
common corner for Lots 6 and 7 . . ." In a cross-complaint
appellant sought reformation of the deed accordingly.

In support of his contention appellant relied on the escrow
instructions signed by him and Manuel Vierra on January
4, 1947, in which the description of the frontage read: "Be-
ginning at a harrow tooth on the southwesterly line of Main
Street, distant thereon North 23° 00' West *596.00 feet* from
the point of intersection of the said southwesterly line of
Main Street with the northwesterly line of Reed Street, . . . ;
running thence North 23° 00' West along the said south-
westerly line of Main Street 55.00 feet to a stake set at the
common corner for Lots 6 and 7 . . ." It is conceded by ap-
pellant that said description is inconsistent because the actual
distance of the monuments, the harrow tooth and the stake
as therein described, would be 60 feet. He contends, however,
that the escrow holder bank without consulting the parties
erroneously resolved the discrepancy in favor of the monu-
ments and that appellant because he could not read, was
not aware either of the discrepancy in the escrow instructions
or the alleged mistake in the deed.

The evidence further showed that respondent lived in the
house on the parcel in question and that if the boundary
appellant contended for were accepted the house would be
too near the property line to leave the side line set back
required by local law and that parts of the building would
even protrude over the property line. Appellant conceded
this but testified that respondent had agreed to move the
house at her expense. He did not wish to sell 60 feet be-
cause that would include part of the garage driveway of
his own adjacent home and he did not wish to replace his
existing driveway, which curved to the house sold, by a
straight one which would require the taking out of one or
two trees on his property. Respondent as a witness testified
that the moving of the house to conform to a local ordinance
had never been mentioned as she had bought 60 feet and
there had never been any conversation about buying 55 feet
only. She had in 1938 tried to put up a fence on the
boundary in accordance with the 60 feet width but appellant
had thrown it down and she had abstained from rebuilding
because of death threats by appellant. She had always paid
the taxes in accordance with her deed and appellant conceded

that he never tried to pay taxes on the 5-foot strip in dispute or to have the assessment corrected.

The court held that respondent was owner in fee of the real property as described in the deeds and refused the reformation sought in the cross-complaint, finding in substance that the allegations on which the action for reformation was based were untrue and that said action was barred by the provisions of section 338, subdivision 4; Code of Civil Procedure (the three-year statute for an action for relief on the ground of fraud or mistake).

Appellant first urges that his cross-action was not barred by the statute because in essence it was an action for a recovery of real property (to wit, the disputed 5-foot strip) to which the five year statute of section 318, Code of Civil Procedure, is applicable, relying on cases such as *Murphy* v. *Crowley*, 140 Cal. 141 [73 P. 820] and *Union Ice Co.* v. *Doyle*, 6 Cal.App. 284 [92 P. 112]. █ The California authorities distinguish between cases in which action for reformation on the ground of fraud or mistake is incidental to an action to quiet title or in ejectment, in which cases, as in the ones cited, the five year statute prevails and cases where there is no attempt to recover property or establish title over and above such action for reformation, in which case the three year statute of section 338, subdivision 4, Code of Civil Procedure prevails. (16 Cal.Jur. 437, § 46; Ann. 36 A.L.R.2d 687, 699.) As appellant was in actual possession and did not pray that his title be quieted but took a merely defensive position except for the reformation prayed for, he might come within the latter category exemplified by *Eureka* v. *Gates*, 137 Cal. 89 [69 P. 850], and *Hart* v. *Walton*, 9 Cal.App. 502 [99 P. 719]. However, we need not decide this point or whether even if the action for reformation were barred, appellant could without such reformation rely on the alleged mutual mistake as a defense to respondent's quiet title action, because the trial court also rejected appellant's contention as to mutual mistake in substance, and said decision must be upheld.

█ On its face the deed signed by appellant conveys the property as claimed by respondent without any ambiguity or discrepancy. █ "The presumption is that a written instrument deliberately executed expresses the intention of the parties. . . . It is for the trial court to determine if this presumption has been overcome." (*Kayser* v. *Gorman*, 3 Cal. 2d 478, 486 [44 P.2d 1041].) █ Moreover the escrow in-

structions on which appellant relies tend to support respondent's position. In the conflict between the stated monuments which favor respondent and the stated measurement on which appellant relies, the monuments if ascertained are paramount. (Code Civ. Proc., § 2077, subd. 2.) The escrow holder bank in drawing up the deed evidently followed this rule. It is true that the rule only applies "when the construction is doubtful and there are no other sufficient circumstances to determine it" (Code Civ. Proc., § 2077), and that in the construction of boundaries the intention of the parties is the controlling consideration. (*Machado* v. *Title Guar. & Trust Co.,* 15 Cal.2d 180, 186 [99 P.2d 245].) But as to their intention and prior oral negotiation the testimony of the parties is in hopeless conflict, appellant testifying that it was agreed to that respondent would take 55 feet and move the house, respondent that she bought 60 feet and did not speak about moving the house. That under said circumstances the decision of the trial court is binding on this court does not require citation of authority.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.