In 1922, Louise McCormick and her brother, Arthur Wagner, purchased 80 acres in Louisa county, Iowa. On December 6, 1926, the land was sold for taxes. On December 25, 1926, the tax sale certificate was, at the direction of Louise McCormick, assigned to her mother, Ella Anderson. On May 31, 1930, Mrs. Anderson acquired a tax deed. Mrs. McCormick died in 1936, leaving a will which gave all of her property to William McCormick, her husband, who brought this action, alleging that Louise McCormick had adverse possession of the 80 acres from the date of its purchase in 1922 to the time of her death on May 19, 1936; that the statute of limitations began to run against Mrs. Anderson's rights under her tax deed on December 6, 1929, on which date she was entitled to a tax deed, and that any interest or claim she acquired under her tax deed was barred by the statute of limitations (section 7295, 1935 Code) on December 6, 1934, and asked that his title under the will be declared superior to Mrs. Anderson's tax title and that an undivided one-half interest in the real estate be quieted in him and one-half interest in the defendants, Anna Maasdam and Virginia Auge, who are respectively the widow and daughter of Arthur Wagner, deceased. All of the defendants joined in an answer denying the allegations of the petition. No evidence was introduced by defendants.
Section 7295, 1935 Code, provides that no action for the recovery of real estate sold for nonpayment of taxes shall be brought after 5 years from the execution and recording of the tax deed. Mrs. McCormick was in possession when Mrs. Anderson became entitled to a deed and it is conceded by the parties that the said statute of limitations commenced to run against Mrs. Anderson on December 6, 1929, if Mrs. McCormick's possession was not subservient to the tax title. The serious question in this case is whether Mrs. Anderson's tax title was extinguished by possession of the real estate by Mrs. McCormick from December 6, 1929, to December 6, 1934.
Plaintiff's testimony is substantially as follows: He and his wife leased the farm in 1929 to Eugene Gerst who remained in possession as tenant until 1937. He managed the farm with the consent of his wife, collecting the rents and keeping up the fences, consulting only his wife and never consulting with Mrs. Anderson. He and his wife paid the taxes for the years 1930, *Page 891 
1931 and 1932. As we understand the record, the rents were insufficient to pay these taxes in full and Mrs. Anderson paid the deficiency in the sum of $77. The witness testified that after the death of his wife he discovered on June 6, 1936, that Mrs. Anderson had paid the taxes for the years 1933, 1934, 1936, 1937 and the first one half of the 1935 taxes. He claims he paid the last one half of the 1935 tax. Apparently, when the income from the farm was insufficient to meet the taxes they would be paid by Mrs. Anderson. The income from the farm, from 1929 to 1936, was not more than the taxes. Plaintiff and his wife operated a hotel in Burlington and Mrs. Anderson lived at this hotel from 1925 to 1936 as a "non-paying guest."
The tenant, Mr. Gerst, recognized Mrs. McCormick as the owner until in May, 1937, when Mrs. Anderson leased the property to him. Plaintiff then commenced this litigation.
With reference to the circumstances under which Mrs. Anderson acquired the tax deed, plaintiff testified that, acting for his wife, he paid A.N. Sheridan who had purchased the land at tax sale for an assignment of the certificate to Mrs. Anderson. "I must have recorded Exhibit `Two', [tax deed] I don't know the date. That says 5th of June, 1930, I must have put it on record — when it came to Burlington from Treasurer at Wapello it was delivered to my wife. I must have gotten it from my wife when I took it to Wapello to record. It was a long time ago, it was either my wife or I, not exactly sure, so I think I did. I knew it was a deed to Ella Anderson."
Paragraph 4 of the will of Louise McCormick reads:
"I own an undivided one-half interest in the E-1/2 S.E. 1/4 Sec. 13, Twp. 74 R-4, Louisa Co. purchased and recorded in the name of Louise McCormick and Arthur Wagner. This property by agreement
was sold for taxes and a tax deed issued to Ella Wagner (Anderson). The widow of Arthur Wagner and myself redeemed the property but left the title in the name of the said Ella Wagner. This property is not incumbered except about 2 years taxes in arrears. The said Ella Anderson does not now have, or never did have any equity in this property." (Italics ours.)
This is all the testimony that throws any light on the arrangement between Mrs. McCormick and Mrs. Anderson about the tax deed. Mrs. Anderson was living at the hotel operated *Page 892 
by plaintiff when the tax sale certificate was purchased and he conducted the negotiations with Sheridan and also recorded the tax deed. Mrs. Anderson would occasionally ride out to the farm with plaintiff. If plaintiff knew what the arrangement between his wife and Mrs. Anderson was he did not disclose it in his testimony.
[1] If plaintiff has established that Mrs. McCormick had the necessary possession of the real estate from December 6, 1929, to December 6, 1934, he must prevail because all rights of Mrs. Anderson under her tax deed would be extinguished by her failure to recover the real estate within the short limitation period. Ordinarily, the possession necessary to bar an action under section 7295 is not the possession required under the general statute of limitations.
In Clark v. Sexton, 122 Iowa 310, 312, 98 N.W. 127, 128, the opinion states:
"We have many times said that possession of land, in order to bar an action under a tax title, need not be such as is required to make it adverse, hostile, and exclusive under the general statute of limitations. If it is such as would entitle the tax title owner to an action against the occupant, who, of course, must be the fee-title owner, it is sufficient. Griffith's Ex'r v. Carter, 64 Iowa 193; Barrett v. Love, 48 Iowa 103. The constructive possession of the tax-title owner yields of course, to the actual possession of the owner, and the owner's possession need not be adverse. Such possession in fact as would authorize the tax-title owner to maintain an action against the fee-title owner is all that is required to negative the tax-title owner's constructive possession, and to bar his action after the lapse of the five years."
[2] If this rule were applicable to this case, we may assume that the possession of Mrs. McCormick would have been sufficient to entitle plaintiff to a decree. But the evidence reveals that Mrs. McCormick had the deed issued to Mrs. Anderson under some agreement between them.
The effect of the tax deed to Mrs. Anderson under an arrangement with her daughter was, on the question of proof of possession by plaintiff, the same as a conveyance of the real estate by Mrs. McCormick to Mrs. Anderson, and the presumption is that after the tax deed issued the continuing possession *Page 893 
of Mrs. McCormick was subordinate to the tax title of Mrs. Anderson and to defeat the tax title plaintiff must overcome the presumption and prove that Mrs. McCormick asserted title adverse to and in hostility to Mrs. Anderson, that is, Mrs. Anderson's possession must have been that adverse, hostile and exclusive possession required by the general statute of limitations. The continuing possession of Mrs. McCormick, the collection of rents and payment of taxes was not sufficient to establish the required adverse possession.
In Garst v. Brutsche, 129 Iowa 501, 504, 105 N.W. 452, 454, the court states:
"The unbroken voice of authority is to the effect that, if a grantor remain in possession after the execution and delivery of a deed to the land, he will be regarded as holding the premises in subserviency to his grantee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession, and render it adverse to the grantee. * * * Of course, a grantor, remaining in possession after sale, may make his possession adverse. But, generally speaking, he must disclaim holding for the grantee, and openly assert his own title in hostility to the title claimed under his previous deed. Express notice does not seem to be necessary, but there must be such acts of repudiation of the relationship as to bring home to the grantee knowledge of the fact that a disclaimer is made."
In McClenahan v. Stevenson, 118 Iowa 106, 112, 91 N.W. 925,927, the court states:
"But the mere fact that the grantor and his heirs remain in possession, enjoying the property in the same manner as they did before the conveyance was made, does not bind the grantee with notice of an adverse claim. * * * Of course, if the grantor and his heirs remain in possession for the statutory period, openly claiming the land as their own, and this claim is made known to the grantee, either expressly or by implication, title may be acquired through such possession. * * * But he must openly claim the land as his own, and not under or by the permission of his grantee. The presumption, as elsewhere stated, always is that a grantor who remains in possession holds without claim of right, and by sufferance of his grantee." See Clark *Page 894 
v. Chapman, 213 Iowa 737, 239 N.W. 797; Warner v. Tullis,206 Iowa 680, 218 N.W. 575; Luckhart v. Luckhart, 120 Iowa 248,94 N.W. 461.
The record warrants the inference that Mrs. Anderson had furnished substantial financial backing to plaintiff and his wife in connection with the operation of the hotel. If there was a trust relation, Mrs. McCormick's possession would, of course, be in recognition of and not hostile to Mrs. Anderson's legal title. It is unnecessary to speculate on the terms of the arrangement. Plaintiff seeks to establish his title to the real estate solely on the contention that his wife's continued possession was sufficient to defeat the tax title. Whatever the understanding, there is no evidence that Mrs. McCormick expressly or impliedly notified Mrs. Anderson that she was asserting her title in hostility to Mrs. Anderson's fee title under the tax deed.
The only evidence of disclaimer of the relationship of grantor and grantee is found in the will of Mrs. McCormick which was executed long after December 6, 1934, and at a time when Mrs. Anderson's title was safe from attack under section 7295.
[3] The possession of Mrs. McCormick was subservient to Mrs. Anderson's tax title during the period from December 6, 1929, to December 6, 1934, during which time she brought no action to recover the property and after December 6, 1934, she was barred from bringing the action by Code section 7295 and her patent title was inferior and yielded to Mrs. Anderson's new independent title. It follows that plaintiff, who claims title through Mrs. McCormick, was not entitled to a decree.
[4] On cross-examination of plaintiff he was asked whether he recalled the time Mrs. Anderson gave him $5,000 in bonds to permit him to operate the hotel. The witness first denied then admitted that Mrs. Anderson "put up" $5,000 for him but testified she "got paid for it." Plaintiff claims this was not proper cross-examination and immaterial to the issues in the case. The question was asked after the witness had testified that Mrs. Anderson advanced money from time to time while he was operating the hotel, "possibly a little, just a little loan for a few weeks or few months, not very often."
Mrs. McCormick's will stated that the deed was issued to Ella Anderson "by agreement." Because of inferences that *Page 895 
might be drawn from this testimony as to the purpose of giving the deed the evidence was not inadmissible, though in view of our disposition of the case it has very little probative value, and we have not considered it in reaching our conclusion.
[5] Plaintiff testified on direct examination that he met with Mrs. Anderson in the Burlington Savings Bank after the death of his wife, that the tax deed was in his wife's box, that Mrs. Anderson saw the deed and nothing was said about the ownership of the tax deed at this time. He was then asked:
"Q. State whether or not Mrs. Anderson made any claim to this eighty acres of land in Louisa County at that time or prior to that?"
The court sustained appellees' objection to the question. The question called not for the conversation but for a conclusion. It refers to any claim and not to a claim made under a tax deed. The witness stated that nothing was said about ownership of the deed at the time and later testified that the first he knew that Mrs. Anderson claimed the real estate was after his wife's death when he discovered that she had been paying the taxes. Apparently this is the only claim he knew Mrs. Anderson made. Clearly, there was no prejudice to appellant in sustaining the objection.
The case is affirmed. — Affirmed.
SAGER, MILLER, HAMILTON, MITCHELL, and BLISS, JJ., concur.
HALE, J., takes no part.